Good morning, your honors, and may it please the court. My name is Mark Ebert, and I represent Mr. Aaron Cooper. I'll begin by addressing the uncertified issue that this court ordered both parties to be prepared to address today, which is whether the 2004 district court decision barred Mr. Cooper's conviction on substantially the same evidence at a later retrial. And there are two theories that that can be based on. One, of course, is collateral estoppel, and the other is law of the case. But under either theory, the primary issue, and that was the primary issue both for the district court and for the California Court of Appeal, is whether the evidence at the second trial was substantially different from the evidence at the first trial, or to put it more accurately, different in a way that helps the prosecution. Because the second trial was very different in one way, which is at the first trial there was admitted evidence by an alleged co-conspirator, Mr. Kingdom, which was the only evidence that placed Mr. Cooper at the scene of the murder or as a participant in the murder, and that evidence was excluded at the second trial. And I think it's important to keep that in mind when comparing whether the other evidence was substantially similar or not, because that made the second trial different in a way that really was to the defendant's benefit, as opposed to the opposite. Starting with the collateral estoppel issue, the Supreme Court in Ashby Swenson is a case that's factually very similar to the case at Barr. In that case, a defendant was robbed by several masked men, but the jury specifically found that there was insufficient evidence that the defendant was one of the robbers. The defendant was retried, this time for robbing a different one of the poker players, but unlike this case, the identification evidence got substantially stronger at the second trial. Nevertheless, the Supreme Court ruled 8-1 that the second trial was barred by collateral estoppel, and it also ruled that that doctrine was part of the Fifth Amendment guarantee against double jeopardy. Judge Ilston had both petitions? Correct. She was the judge in both the 2004 and 2010 habeas matters. She granted relief on the first petition? That is correct. Based on Bruton grounds? No, she based it on two grounds. One was the confrontation clause, which admitted the kingdom's, you know, out-of-court statement, which was the only evidence linking Mr. Cooper to the murder, and the second ground was insufficient evidence on the murder conviction. She said basically, if you take away the kingdom statement, there was insufficient evidence to tie Mr. Cooper to the murder. She thought there was sufficient evidence on the kidnapping, but not on the murder. Yet the second time around, she thought the evidence was, in fact, sufficient. Yeah, and what she did was she essentially followed the California Court of Appeals analysis, which said that the evidence was substantially different at the second trial. You know, I went through in my brief in great detail the reasons why I thought it wasn't substantially different, and I can address specifics, but in general, I would say that much of the testimony at the second trial was simply rereading testimony from the first trial. That, in particular, includes the testimony of Mr. Cross, another alleged co-conspirator, and that was really the most damning or closest to damning evidence against Mr. Cooper on the murder. Well, there were additional witnesses in the in the second trial weren't in the first, I believe. I don't believe there were any significant additional witnesses. Mr. Love. Excuse me, Mr. Love was re-read. Oh, okay, Goody Walton's testimony was live rather than, you know. Right, and that that was the only different witness that I can recall at this time. It was Goody Walton who came in person rather than having a preliminary hearing testimony. Walton's testimony regarding, well, there was some consciousness of guilt that was brought out in the second trial, I guess, rather than the first. I guess the district court indicated that the motive evidence was stronger, but I guess the main distinction that I can see is that the second trial showed that the victim was likely killed shortly after he was abducted, and it appears that that, you know, could substantially and may have substantially strengthened, and apparently did substantially strengthen the state's case to provide that necessary link between Mr. Cooper and the murder. I would agree that that is the, what the court believed was the biggest difference. I actually don't agree that there was a substantial difference there, which is why, unlike other parts of my brief, I quoted the testimony from both trials in the body rather than in a footnote. The medical examiner at the first trial couldn't give any basic time frame with respect to the timing of the murder. I mean, it was very vague. And then at the second, he, that was a, there was specific testimony elicited, and there was specific testimony brought out regarding that. I would point out the following. First of all, it was the same pathologist testifying both cases. He was reading from the same reports, the same notes. There had been no additional work done on the body, no additional investigation, but also I disagree respectfully that his testimony was significantly different. Well, I, it's interesting because I looked at the transcript, and I have it here, between the second and the first trial, and I suppose the cross-examination at the second trial could have been more aggressive than it was, but it wasn't, and especially in light of what was testified at the first trial, but there was that distinction that came out, and you know, people could, I guess, argue on, you know, how much they appreciate the difference, but I think it's, it's not insignificant. Here's how I interpret the difference between the two, the testimony of the same pathologist at the two trials based on the same reports, the same notes. In both cases, he said he could not specify the time of death to a specific date and time, and that's true of the second trial as well. In both cases, he said that the decomposition of the body was so great that he would have thought that Coco was dead even before he was kidnapped, and in both trials, he said that because of the very great heat at that time of year, that that could have accelerated the decomposition and essentially misled him as to as to the time of death. The only difference, I think, that you can really point to is he was asked, could he have died very near the time, excuse me, could he have died on the same day that he was kidnapped, and he said he could have, but really, that's clear from his testimony in the first trial. In other words, if the decomposition was so great that he, that he would have died, he would have assumed he died even before he was kidnapped, then of course it was sometime, it could have been sometime shortly after he was kidnapped. I really don't think that saying, well, it could have been the same day, really adds anything, and nor do I think that that is anything other than speculation, given the totality of his evidence, of his testimony, and finally, in terms of that one issue, I don't think that that comes anywhere near the ability to plug the hole that was left by the exclusion of Kingdom's statement, which is the only thing that put Mr. Cooper at the scene and as a participant. So, I mean, that's how I interpret it. I don't think it's materially different, and I, you know, obviously you're going to make the decision, but I don't see that as... And the district court highlighted it. Right. I'm just looking at what the district court highlighted as the distinction, and she gave a pretty careful review, I thought, at the first go-around and then at the second go-around. So, I just wanted to bring it out to give you a chance. And that's my answer, the best answer I have, and I think it's persuasive to me, anyway, that it could have been the same day really doesn't add anything to what he said at the first trial, which is, you know, decomposition was so great that it could have been earlier. I think also that the... You can look at what evidence was not present at either trial to begin with. There were no witnesses to the killing. There was no properly admitted evidence at either trial that put Mr. Cooper at the scene of the murder. The evidence of multiple perpetrators was, according to Judge Elston, weak. But even if there were, there was no evidence that Mr. Cooper was one of the perpetrators. The witnesses on the San Mateo Bridge was unable to identify Mr. Cooper or whatever was thrown off the bridge. There were no fingerprints. There was no ballistics match. Mr. Cooper actually was said to have been carrying a different type of gun than the one that was used in the killing. He had a nine millimeter. A different caliber was used in the killing. The coroner, I believe, fairly read, was unable to fix the time of death at that precise three or to seven hour window that Mr. Cooper would have had an opportunity to participate. There's no blood, cloth, or fibers on the gloves or jackets. The district court adequately rejected, for adequate reasons, the gunshot residue evidence, and there was a lack of any other evidence putting Mr. Cooper there. Now, I could go through each of the four or five issues that the court, the district court, said were somewhat different at the second trial, but I would summarize, unless you have specific questions, I would summarize them by saying Cross, Walton, Rodney Love, the primary witnesses were simply Walton, in terms of a preliminary hearing testimony, simply re-read the 1995 evidence at the later trial, and the California Court of Appeals said repeatedly, with respect to many witnesses, Zanetta Hodges, Mr. Hassan, and others, that although their testimony differed, it did not differ materially. And that was the California Court of Appeals conclusion. Absent questions, I would like to save my last three minutes for rebuttal. Thank you. Thank you, Your Honors. Rene Chacon, representing the state of California, may it please the court. Councilman spoke. There was, in fact, another witness who testified in the second trial that did not appear in the first trial, and that's the liquor store owner who provided compelling testimony that he saw someone with the same distinctive green plaid shirt that Mr. Cooper was wearing at the time of his arrest, and that witnesses saw him wearing at the time that he shoved the victim into the trunk of the car. He saw someone matching the description, wearing the green plaid shirt, abandoning the red Corvette at the liquor store hours after the kidnapping murder. From that, the prosecutor argued that, in fact, it was Mr. Cooper who was still involved in the conspiracy. There he was, abandoning the murder weapon in the San Mateo Bridge, and there he was, abandoning the distinctive Corvette near the liquor store. And you say that goes to the murder and not just the kidnapping? Absolutely, because it showed that Mr. Cooper was yet still involved hours after the kidnapping in abandoning the red Corvette. But does that depend when the murder took place? Oh, absolutely. The murder took place up in the hills. When did the murder take place? This prosecutor, the second prosecutor, armed with Judge Ilston's order, asked the pathologist, you know, review your records. We're going to talk, focus on time of death. And the best Dr. Herman could testify to was that the victim died very near the time that he was last seen alive, and that it could have been the very same day. And that's different from the first trial. Absolutely, because the focus of the first trial was very much different. The focus of the second trial was, by this second prosecutor, marshalling more facts on the challenging murder theory. He had Mr. Cooper dead to rights on kidnapping. Everyone saw him shoving the victim into the car. But whether or not he was involved with the murder up in the hills after the kidnapping, without Mr. Kingdom's testimony, that was the basis for the reversal in the first trial. The second prosecutor was marshalling every bit of fact that he could find. And that's why we have Goody Walton testifying at the second trial and providing a different perspective on motivation. She testified, unlike the first trial, that she received a call from Mr. Cooper  and that motivation aided in, we lost Goody Walton at the first trial, but we sure picked her up for Mr. Kingdom's trial and Mr. Cooper's second trial. So, the issue of whether collateral or estoppel or raw the case was before the state court. The state court found the second jury was presented with different evidence to assess. Judge Ilston reviewed both transcripts of both trials and said, yes, that's that's the case. We believe that the district, that our opponent has failed to show that the trial, that the state courts unreasonably applied Lockhart v. Nelson, Burks v. U.S. and Jackson v. Virginia on the sufficiency of the evidence claim. Unless I can answer more specific questions from the panel. So do you, is it your position, you agree it comes down to the differences between the first and the second trial to show the sufficiency and what the district court highlighted? Well, I mean, do we? The claim in the state court was that collateral estoppel, double jeopardy, and the state concept of law of the case barred the retrial. Judge Ilston reviewed her first finding and said, no, that's not the case. She ordered a retrial. So the state courts correctly discerned that double jeopardy was no bar to retrial. And whether or not the state concept of law of the case barred the retrial, there was sufficient differences in the second trial to overcome that state claim. Now, the certified issue is whether there's sufficient evidence under Jackson v. Virginia to affirm. And in this case, the district court found that there's plenty of evidence of a kidnapped, of a kidnapping, but much, much more, much different outcome with respect to the sufficiency evidence on murder. In fact, there was no evidence that saw Mr. Cooper shoot or stab the victim up in the hills. No. That theory was played out under a circumstantial evidence that the, that, that, that the prosecutor argued and the jury found sufficient. The Court of Appeal in the state of California found sufficient, as did the California Supreme Court, as did Judge Ilston. Unless I can answer more, more particular questions from the panel, we'd be willing to submit the matter, Your Honor. Do you have any questions, Judge Fletcher? No. Okay. Thank you, Your Honor. Submitted. Thank you. Your Honors, first of all, in response, I think perhaps the other counsel may have misspoken on one issue, which is that both of the liquor store employees, Musa Hussein and Muammar Mohamed, did testify at both trials. And if you look at pages 11 and 12 of my opening brief, you'll see in footnotes, the body of the brief has what they said in 2004 and the footnotes say that they tested, what they testified to in 1995. So they were both at both trials. And I also think that the statement that... Well, did they testify exactly this? I mean, did... Yeah, as a matter of fact, as far as Musa Hussein was concerned, the California Court of Appeal found that although there were differences, there were not material differences in his testimony between 1995 and 2004. I don't really see any significant difference in either of their testimonies myself. I do think that the statement that he was wearing the distinctive green plaid shirt is a little bit of an overstatement. Neither Mr. Hussein nor Mr. Mohamed actually identified Mr. Cooper. They both talked about African American men. And it wasn't a distinctive green plaid shirt. It was a plaid shirt that was seen by somebody running away from the Corvette, somebody who was never identified. And the witness who saw something being thrown off the bridge was never identified Mr. Cooper either. So I think that's a little bit of an overstatement of what these witnesses said. Secondly, as to the retrial issue, the issue that I am arguing here is not whether or not retrial was barred. The issue that I'm arguing here is whether the conviction on substantially the same evidence is barred. And that's different from what counsel just said. And in both the California Court of Appeal opinion and the District Court opinion, that was the crux of what they both decided and why. And third and finally, absent questions, I just want to say that your honor is absolutely correct. The state has a tendency to conflate the evidence on the kidnapping from the evidence on the murder which occurred later and to which we have no witnesses. And for that reason, I would just urge the court to keep those two things separate as Judge Hilston did in making her decision. So does the court have any more questions? Good. Judge Fletcher, do you have any last questions? No, thank you. Thank you both very much for your presentations this morning. The case is now submitted and our docket is complete for today and so we are adjourned. We'll be in recess. All rise.
judges: Fletcher, Hawkins, Murguia